UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CODY JAMES MALONE,
    Petitioner,

vs.                                      Case No.: 5:21cv38/TKW/EMT

W.E. MACKELBURG,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Cody James Malone (Malone) commenced this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 and a supporting memorandum (ECF Nos. 1, 2). Malone challenges a disciplinary decision issued by the federal Bureau of Prisons (BOP) (*see id.*). Respondent filed a response to the petition, contending Malone's claims are without merit (ECF No. 13). Malone filed a reply (ECF No. 16). Malone and Respondent submitted relevant portions of the administrative record (ECF No. 2 at 3–16; ECF Nos. 13-1, 13-3, 13-4, 14-1).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B)–(C) and Fed. R. Civ. P. 72(b). After careful consideration of the issues and the administrative record, the undersigned concludes that Malone's habeas petition should be denied.

I.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the administrative record (*see* ECF No. 2 at 3–16; ECF Nos. 13-1, 13-3, 13-4, 14-1).[1]  On January 15, 2020, Special Investigative Services (SIS) Technician M. Del Valle issued Malone an incident report (IR), IR Number 3352967, charging Malone with Prohibited Act 199–Disruptive Conduct "Most Like" Prohibited Act 108–Manufacturing/Possession of a Hazardous Tool (ECF No. 14-1 (IR)).  *See* 28 C.F.R. § 541.3, Table 1—Prohibited Acts and Available Sanctions.  SIS Technician Del Valle asserted the following facts as the basis for the charge:

> On January 15, 2020, at approximately 12:50 PM., I, SIS, M. Del Valle, became aware SIS investigation YAP-20-0012, was complete.  This investigation determined inmate Malone, Cody James, Reg. No 11171-010, had manufactured an unauthorized file and/or possessed the code to utilize a manufactured file within the I-Connect BOP Education Network System.  Specifically, a security scan conducted by the BOP Information Technology Department revealed multiple inmates' user profiles contained unauthorized files within the I-Connect system, including shortcut files, .html files, script files. and/or application files.  The discovery of these files on inmate user profiles revealed these inmates had circumvented (hacked) the I-Connect system security programming and created and/or utilized unauthorized files.

(ECF No. 14-1 at 1 (IR)).

---

[1] Many of the exhibits submitted by the parties are duplicative.  The court will cite to only one and refer to it by the document number and page number(s) automatically assigned by the court's electronic filing system.

Case No.: 5:21cv38/TKW/EMT

Lieutenant Foreman, the assigned Investigator, delivered a copy of the IR to Malone on January 15, 2020, at 6:24 p.m., advised Malone of his right to remain silent, and provided Malone an opportunity to provide other facts or identify any witnesses (*see* ECF No. 14-1 at 1, 3 (IR)).

A Unit Disciplinary Committee (UDC) reviewed the IR on January 17, 2020 (*see* ECF No. 14-1 at 2 (IR)). The UDC referred the IR to the Discipline Hearing Officer (DHO) for further review, based on the seriousness of the charge (*see id.*). The UDC provided Malone with notice that the DHO hearing would be held at a future date (*see* ECF No. 2 at 8 (Notice of Discipline Hearing Before the DHO)). Malone was notified of certain rights, including the right to have a full-time BOP staff member represent him at the hearing (*see* ECF No. 2 at 8, 9 (Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing)). Malone was also notified that he had the right to present a statement on his own behalf, call witnesses, and present documentary evidence at the hearing (*see id.*). Malone declined staff representation and indicated he did not wish to call witnesses (*see id.*).

Malone's DHO hearing was held on January 22, 2020, at 6:55 a.m. (*see* ECF No. 13-1 (DHO Report)). The DHO summarized Malone's statement as follows:

> The inmate stated he received his copy of the Incident Report and he understood it. He stated he understood his rights before the DHO, requested no staff representative and requested no witnesses. The inmate stated he was ready to proceed. The inmate admitted guilt to Disruptive Conduct Most Like Manufacturing/Possession of a Hazardous Tool, Code 199 ML [Most Like] 108. When asked if he wanted to make any further comment, he stated, "I admit having the files on my profile. I just disagree with the severity."

(ECF No. 13-1 at 1 (DHO Report)). The DHO found Malone guilty of the charged infraction (*id.*).

The DHO issued a written decision stating the basis for the decision as follows:

> The DHO finds on December 17, 2019 (prior to), you committed the prohibited act of Disruptive Conduct Most Like Manufacturing/Possession of a Hazardous Tool, Code 199 ML 108.
>
> The specific evidence relied upon includes the written statement of the reporting staff member. SIS Technician M. Del Valle stated, "On January 15, 2020, at approximately 12:50 PM, I, SIS, M. Del Valle, became aware SIS investigation YAP-20-0012 , was complete. This investigation determined inmate Malone, Cody James, Reg. No. 11171-010, had manufactured an unauthorized file and/or possessed the code to utilize a manufactured file within the I-Connect BOP Education Network System. Specifically, a security scan conducted by the BOP Information Technology Department revealed multiple inmates' user profiles contained unauthorized files within the I-Connect system, including shortcut files, .html files, script files, and/or application files. The discovery of these files on inmate user profiles revealed these inmates had circumvented (hacked) the I-Connect system security programming and created and/or utilized unauthorized files."

As evidence, the DHO considered SIS Investigation YAP-20-0012. This investigation concluded you accessed prohibited applications on the YAX I-Connect System, in violation of PS 1237.16, Information Security.

As evidence, the DHO considered the memorandum from K. Morgan, Chief, Field IT Operations, dated December 17, 2019. This memorandum documents the scan of all user profiles within the I-Connect System and the identification of unauthorized files within numerous inmate user profiles.

As evidence, the DHO considered the Involved Inmate Account Info Spreadsheet. This spreadsheet identifies inmate user profiles in the I-Connect System with unauthorized files. You are identified as one of the inmates with unauthorized files in your user profile.

As evidence, the DHO considered the Scan Summary Spreadsheet. This spreadsheet identifies the specific unauthorized files located on each identified inmate's user profile. Your user profile was identified as containing shortcuts to files/applications, and application files (.exe, .com).

You appeared before the DHO and you acknowledged to the DHO that you received a copy of the incident report and that you understood it. When asked by the DHO if you admitted or denied committing the prohibited act of Disruptive Conduct Most Like Manufacturing/Possession of a Hazardous Tool, Code 199 ML 108, you admitted guilt. When asked if you wanted to make any further comment, you stated, "I admit having the files on my profile. I just disagree with the severity."

The DHO considered your statement. It was clear to the DHO that SIS Technician M. Del Valle has sufficient experience to determine you violated the security of the Bureau of Prisons' I-Connect System, whereas the incident report documented the discovery of unauthorized files on your I-Connect System user profile, occurring prior to December 17, 2019.

> Upon your commitment to any Bureau of Prisons facility, you participate in the institution's Admission and Orientation (A&O) program wherein you are advised of Bureau of Prisons (BOP) rules and regulations and your responsibility to abide by these rules. You were also provided an A&O handbook upon your entry into this facility which further details prohibited acts. Your participation in A&O and knowledge of BOP ru1es and regulations further establishes your culpability.
>
> Therefore, based on the above listed evidence, the DHO finds some facts do exist which show you committed the prohibited act of Disruptive Conduct Most Like Manufacturing/Possession of a Hazardous Tool, Code 199 ML 108, and sanctioned you accordingly.

(ECF No. 13-1 at 2 (DHO Report)).

As punishment for the disciplinary infraction, Malone received disallowance of 41 days of good conduct time, assignment to disciplinary segregation for 15 days (time served), and restriction of email privileges for six months (through July 21, 2020) (ECF No. 13-1 at 3 (DHO Report)). The DHO provided the following reason for the sanctions:

> The action/behavior on the part of any inmate to circumvent computer software by manufacturing/possessing unauthorized files threatens the safety and security of the institution. The sanctions imposed by the DHO are to let you know that you, and you alone, are responsible for your actions.
>
> To hold you accountable for your actions, the DHO sanctioned you as outlined in section VI. Hopefully, these sanctions will have significant impact upon your future conduct and will deter you from future prohibitive acts. If not, the DHO cautions you the Bureau of Prisons

believes in, and practices, progressive discipline. Repetitive behavior of this sort will likely result in even harsher consequences.

The Disallowance of Good Conduct Time sanction was imposed to comply with mandatory sanctioning guidelines for PLRA inmates.

The Disciplinary Segregation sanction was imposed as punishment for your behavior and should serve as a deterrent against future such conduct.

The Restriction sanction was imposed because the severity of the offense merits imposition of sanctions which will impress upon you that your unwillingness to abide by rules and regulations will result in punishment, which will deprive you of a pleasurable privilege.

(ECF No. 13-1 at 3 (DHO Report)).

Malone unsuccessfully appealed the DHO's decision through the BOP's administrative remedy program (*see* ECF No. 2 at 10–16 (administrative appeals)).

II.   DISCUSSION

Malone's habeas petition presents a due process challenge and an "unequal treatment" challenge to the disciplinary decision (*see* ECF No. 1 at 6).

With respect to due process, Malone asserts the charging IR was simply a "cut and paste" version of the same IR used to charge all inmates accused of hacking the I-Connect system, and it did not allege specific facts describing his individual offending conduct (ECF No. 16 at 3–4). Malone further contends his conduct did not rise to the severity level of the Prohibited Act with which he was charged, and

the DHO found him guilty based upon the conduct of "conspirators" instead of his individual conduct (*see* ECF No. 1 at 6; ECF No. 2 at 2; ECF No. 16 at 2–6).

Discipline by prison officials in response to a prisoner's misconduct "falls within the expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Constitutional due process rights attach to prison disciplinary proceedings if the proceeding at issue implicates a protected liberty interest such as gain time credits. *See Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 453–55 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. Where gain time credits are at stake in a prison disciplinary proceeding, inmates must receive only the following procedural protections: (1) advance written notice of the charges against them; (2) an opportunity for the inmate to call witnesses and present documentary evidence, so long as doing so is consistent with institutional safety and correctional goals; and (3) a written statement by the factfinder outlining the evidence relied on and the reasons for the disciplinary action. *Id.* at 563–66.

Additionally, the quantum of evidence necessary to support a conviction for a prison disciplinary infraction is much lower than in criminal proceedings. In *Hill*, the Supreme Court held that "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by **some evidence** in the record." 472 U.S. at 454 (emphasis added). The Court elaborated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced" . . . . Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is **any evidence** in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455 (emphasis added); *see also Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994) (observing that the federal courts should not be "judging and reweighing the evidence presented in a prison disciplinary hearing," rather, the "role of this court is to determine whether an inmate receives the procedural protections provided by *Wolff* and whether 'some evidence' exists which supports the hearing officer's determination").[2]

---

[2] In situations where the evidence is conflicting, the BOP regulations appear to go one step further and require that the DHO's decision be based on "the greater weight of the evidence." 28 C.F.R. § 541.8(f). However, there was no conflicting evidence in Malone's case.

Here, Malone was charged with Disruptive Conduct "Most Like" Manufacturing/Possession of a Hazardous Tool, under Codes 199 and 108 of the BOP's Table of Prohibited Acts. Those Codes define the following disciplinary offenses:

> 199   Conduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another Greatest severity prohibited act. This charge is to be used only when another charge of Greatest severity is not accurate. The offending conduct must be charged as "most like" one of the listed Greatest severity prohibited acts.
>
> 108   Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.*, hacksaw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device).

*See* 28 C.F.R. § 541.3, Table 1—Prohibited Acts and Available Sanctions, Greatest Severity Level Prohibited Acts.

Malone's charging IR alleged the following factual basis for the charge:

> On January 15, 2020, at approximately 12:50 PM., I, SIS, M. Del Valle, became aware SIS investigation YAP-20-0012, was complete. This investigation determined inmate Malone, Cody James, Reg. No 11171-010, had manufactured an unauthorized file and/or possessed the code to utilize a manufactured file within the I-Connect BOP Education Network System. Specifically, a security scan conducted by the BOP Information Technology Department revealed multiple inmates' user profiles contained unauthorized files within the I-Connect system,

> including shortcut files, .html files, script files. and/or application files. The discovery of these files on inmate user profiles revealed these inmates had circumvented (hacked) the I-Connect system security programming and created and/or utilized unauthorized files.

(ECF No. 14-1 at 1 (IR)).

The purpose of disciplinary charging document is "to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 564; *see also Santiago-Lugo v. Warden*, 785 F.3d 467, 470 (11th Cir. 2015) (citing *Wolff*)). The IR issued to Malone fulfilled that purpose. The IR charged Malone and other inmates with hacking the I-Connect system security programming and creating and/or utilizing unauthorized files. The IR afforded Malone an opportunity to marshal evidence in his defense and prepare arguments to persuade the DHO that he was innocent of the charged offense. Malone argued to the DHO that his conduct did not match the severity level of the charged offense (in other words, his conduct warranted a lesser charge). Malone does not allege he was unclear as to the nature of the charge or the facts supporting the charge, or that he was otherwise prejudiced by the lack of more particularized facts in the charging document. Therefore, to the extent Malone contends the IR failed to satisfy *Wolff*'s advance notice requirement, his argument is without merit.

As previously noted, Malone also argues that the conduct charged in the IR did not rise to the severity level of Greatest Severity Level Code 199 "Most Like" Code 108. He argues that his conduct was more appropriately charged as Moderate Security Level Code 319, which prohibits "[u]sing any equipment or machinery contrary to instructions or posted safety standards" (*see* ECF No. 16 at 5). *See* 28 C.F.R. § 541.3, Table 1—Prohibited Acts and Available Sanctions, Moderate Severity Level Prohibited Acts. Malone claims that the DHO found him guilty based upon the conduct of other offending inmates instead of his own individual conduct. Malone states that his purpose in seeking judicial review of the DHO's decision is "to have the issue of the entire record re-examined and the evidence weighed once more so that the courts can make their own decision on the justice [he] seeks" (*id.* at 6).

As previously discussed, the Supreme Court instructed that determining whether the "some evidence" standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455. Instead, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.*

Here, the DHO's Report identified the evidence supporting Malone's guilt, including:

> (1) the written statement of the SIS technician, which described the SIS Investigation and its results, namely, that Malone had circumvented (hacked) the I-Connect system security programming and created and/or utilized unauthorized files;
>
> (2) the SIS Investigation, YAP-20-0012, which concluded that Malone accessed prohibited applications on the I-Connect System, in violation of the BOP's Program Statement governing Information Security;
>
> (3) the memorandum from the Chief of Field IT Operations, which documented the scan of user profiles and identified unauthorized files within Malone's user profile;
>
> (4) the Involved Inmate Account Info Spreadsheet, which identified Malone as one of the inmates with unauthorized files in his user profile;
>
> (5) the Scan Summary Spreadsheet, which identified Malone's user profile as containing unauthorized shortcuts to files and/or applications and application files (.exe, .com); and
>
> (6) Malone's admission that he had unauthorized files in his inmate user profile of the BOP's I-Connect system.

(ECF No. 13-1 at 2 (DHO Report)).

Malone's disciplinary conviction was based upon his individual conduct, not the conduct of other inmates. The DHO cited spreadsheets that identified Malone's individual user profile as containing unauthorized shortcuts to files and/or applications and application files (.exe, .com), and Malone admitted he possessed

unauthorized files in his profile. This evidence could support the conclusion that by hacking the I-Connect system security programming, accessing prohibited applications, and creating and/or utilizing unauthorized files, Malone engaged in conduct that interfered with the security or orderly running of the institution or the BOP, and his conduct was "most like" possessing a tool (i.e., an electronic device) which was hazardous to institutional security.

Malone was afforded all of the procedural due process protections he was due, and the evidence satisfied *Hill*'s "any evidence" standard. Therefore, Malone has not shown that the disciplinary decision violated his due process rights.

Malone also asserts an "unequal treatment" challenge to the disciplinary decision. He complains he was charged and convicted of the same offense as other inmates who "use[d] the software for nefarious reasons," for example, communicating with other inmates (ECF No. 1 at 6; ECF No. 2 at 2). Malone contends he should not have been punished "with the same severity" as those other inmates (*id.*).

Malone's contention that his conduct was less "nefarious" than other inmates who were charged with the same infraction does not state a basis for overturing the disciplinary decision. As previously discussed, there was some evidence to support the DHO's conclusion that Malone committed the infraction with which he was

charged.  So long as there was sufficient evidence to support the conviction, which there was under *Hill*, Malone is not entitled to relief on this claim.

To the extent Malone makes a proportionality argument under the Eighth Amendment, this argument is also unavailing.  The Eighth Amendment prohibits the imposition of cruel and unusual punishments.  *See* U.S. Const. amend. VIII.  "[T]he Eighth Amendment contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"  *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997 (1991) (Kennedy, J., concurring in part and concurring in judgment)).  A non-capital sentence violates the Eighth Amendment only if it is grossly disproportionate to the offense conduct.  *United States v. Farley*, 607 F.3d 1294, 1343 (11th Cir. 2010).  Generally, sentences within the statutory limits are neither excessive, nor cruel and unusual under the Eighth Amendment.  *See United States v. Flores*, 572 F.3d 1254, 1268 (11th Cir. 2009); *United States v. Moriarity*, 429 F.3d 1012, 1024 (11th Cir. 2005).

Assuming arguendo that the proportionality principle applies to prison disciplinary sanctions, which is a far stretch, the disciplinary sanctions imposed upon Malone (disallowance of 41 days of good conduct time, placement in disciplinary segregation for 15 days (time served), and loss of email privileges for six months) did not violate that principle.  The sanctions imposed upon Malone were within the

limits set forth in BOP regulations. *See* 28 C.F.R. § 541.3, Table 1—Prohibited Acts and Available Sanctions, Available Sanctions for Greatest Severity Level Prohibited Acts. Further, the sanctions were not grossly disproportionate to Malone's conduct. Therefore, Malone's "unequal treatment" challenge to the disciplinary decision is without merit.

III. CONCLUSION

Malone's challenges to the BOP's disciplinary decision, Incident Report Number 3352967, are without merit. Therefore, Malone's habeas petition should be denied.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the habeas petition challenging BOP Incident Report Number 3352967 (ECF No. 1) be **DENIED**.

2. That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 13th day of September 2021.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  **Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control**.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**